UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:11-CV-00161-JHM

Jimmy Hendrick, et al.                                                    PLAINTIFFS

V.

FIFTH THIRD BANK, INC.,
d/b/a FIFTH THIRD BANK                                          DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion to Remand [DN 15].  Fully briefed, this matter is ripe for decision.  For the following reasons, the Court **GRANTS** the Plaintiffs' motion to remand.

## I. BACKGROUND

In 2004, Eastern Livestock Co., LLC, a livestock brokerage company with branches in eleven states, refinanced the bulk of its indebtedness through Defendant Fifth Third Bank, Inc.  A credit agreement and a security agreement were executed between Defendant and Eastern Livestock that granted Defendant a first lien on all livestock, livestock in transit and receivables of Eastern Livestock.  From 2004 to 2010, Eastern Livestock regularly engaged in the purchase of livestock from the Edmonton, Kentucky Buying Station on each Tuesday of each week.  Eastern Livestock would purchase cattle from the buying station using checks drawn from its account with Defendant.

In the fall of 2010, Defendant became aware that Eastern Livestock was "kiting" checks in violation of the credit agreement.  On Monday, November 1, 2010, Defendant froze the accounts of Eastern Livestock, but did not notify the company of its actions.  On the following day, Tuesday, November 2, Eastern Livestock conducted its regular purchase of cattle at the Edmonton Buying Station, using checks drawn from its Fifth Third account.  Plaintiffs all sold cattle to Eastern

Livestock on November 2, 2010, at the Edmonton Buying Station and were issued checks drawn on Eastern Livestock's Fifth Third account. However, Defendant refused to honor these checks due to the freeze initiated on November 1, 2010.

Defendant finally notified Eastern Livestock on November 5, 2010, that it had frozen Eastern Livestock's accounts. Shortly thereafter, on November 9, 2010, Defendant filed a complaint against Eastern Livestock in the Hamilton County Court of Common Pleas, alleging claims of conversion, unjust enrichment and fraud. Defendant also moved for the appointment of a Receiver. On November 10, 2010, Elizabeth M. Lynch was appointed as the Receiver for Eastern Livestock, and on December 6, 2010, an involuntary bankruptcy petition placed Eastern livestock in bankruptcy in the Southern District of Indiana.

All cattle that were part of the assets of the Debtor Eastern Livestock, including those sold by Plaintiffs, became a part of the Debtor's bankruptcy estate. The proceeds from the sale of those cattle still remain in the estate. Each Plaintiff is listed as a creditor in the Debtor's bankruptcy, where they seek to recover the value of the cattle sold to the Debtor on November 2, 2010. Plaintiffs' claims in the bankruptcy proceeding have not yet been settled and are listed as disputed. Defendant is likewise a creditor of the Debtor in the bankruptcy proceeding. Defendant has filed a proof of claim in the amount of $35,833,415.02, which has been allowed, but not yet paid.

On September 20, 2011, Plaintiffs filed the instant action against Defendant in the Metcalfe Circuit Court alleging claims of conversion, unjust enrichment, and theft by failure to make required disposition. Five identical lawsuits have been filed on behalf of similar plaintiffs in the Metcalfe

2

Circuit Court.[1]  Plaintiffs allege that Defendant intentionally froze Debtor Eastern Livestock's accounts without informing the company, with the knowledge that Eastern Livestock would purchase a large sum of cattle the following day.  Plaintiffs allege that this was an attempt by Defendant to minimize and reduce the loss incurred by Defendant, in that the cattle would increase the potential assets against which Defendant could assert its first priority lien.

On November 21, 2011, Defendant removed the instant case, and its five companion cases, pursuant to 28 U.S.C. 1441(a), asserting the existence of diversity jurisdiction under 28 U.S.C. § 1332, bankruptcy jurisdiction under 28 U.S.C. § 1334, and supplemental jurisdiction under 28 U.S.C. § 1367.  Plaintiffs have filed a motion to remand contesting the existence of any jurisdiction. In the event the Court finds that bankruptcy jurisdiction exists, Plaintiffs have requested that the Court abstain from exercising such jurisdiction.

## II. DISCUSSION

### A. Diversity Jurisdiction

Removal to federal court from state court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a). District courts have original jurisdiction of "civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a).  The defendant has the burden of proving that removal is proper, Rogers v. Walmart Stores, Inc., 230 F.3d 868, 871 (6th Cir. 2000), including demonstrating

---

[1] The five companion cases are *Marcia Cloyd, et al. v. Fifth Third Bank*, Case No. 1:11-cv-00160; *Donna Johnson, et al. v. Fifth Third Bank*, Case No. 1:11-cv-00179; *WK, a minor, et al. v. Fifth Third Bank*, Case No. 1:11-cv-00180; *Sandy Froedge, et al. v. Fifth Third Bank*, Case No. 1:11-cv-00181; and *Phillip Martin v. Fifth Third Bank*, Case No. 1:11-cv-00182.

by a preponderance of the evidence that the "amount in controversy" requirement has been satisfied, Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 572 (6th Cir. 2001).  The "amount in controversy" is determined by the complaint, Saint Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 291 (1938), and removal is generally improper if, on the face of the complaint, the plaintiff states a claim for less than $75,000, Gafford v. Gen. Elec. Co., 997 F.2d 150, 157 (6th Cir. 1993).  Claims for punitive damages should be included in the amount-in-controversy calculation, "unless it is apparent to a legal certainty that such cannot be recovered."  Hayes, 266 F.3d at 572. Furthermore, "where there is more than one plaintiff, their damages cannot be combined to meet the amount-in-controversy requirement." Everett v. Verizon Wireless, Inc., 460 F.3d 818, 823 (6th Cir. 2006).

The parties agree that there is diversity of citizenship, but Plaintiffs dispute that the amount in controversy exceeds $75,000.  Each Plaintiff has stipulated that his or her respective damages claim does not exceed $75,000.  Plaintiffs argue that because they have disclaimed any damages above $75,000 that Defendant cannot satisfy the "amount in controversy" threshold for diversity jurisdiction.

"A problem arises where . . . a plaintiff alleges an amount in controversy below the jurisdictional amount. Generally, because the plaintiff is 'master of the claim,' a claim specifically less than the federal requirement should preclude removal." Rogers, 230 F.3d at 871.  However, where a state's rules of civil procedure permit a plaintiff to recover an amount in excess of what he has pled, a plaintiff's stipulation that his damages do not exceed $75,000 may be disregarded.  See id.  Kentucky's Rule of Civil Procedure 54.03 is just such a rule, and states in pertinent part that "[e]xcept as to a party against whom a judgment is entered by default for want of appearance, every

4

final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings*."   Ky. R. Civ. P. 54.03(2) (emphasis added).   Therefore, due to Ky. R. Civ. P. 54.03(2) a removing defendant may still demonstrate that the actual amount in controversy exceeds $75,000, despite a plaintiff's disclaimer.   However, "the removing defendant must show that it is 'more likely than not' that the plaintiff's claims meet the amount in controversy requirement."   Rogers, 230 F.3d at 871.

Defendant contends that it has satisfied the amount in controversy requirement because the claimed compensatory damages and possible punitive damages of several of the Plaintiffs, including Plaintiff William Rex Elmore, more likely than not exceed $75,000.[2]   Plaintiff William Rex Elmore has requested compensatory damages in the amount of $25,728.36.   (Compl. ¶ 88.)   Thus, to satisfy the amount in controversy threshold, the Defendant must prove by a preponderance of the evidence that it is more likely than not that Plaintiff William Rex Elmore will receive at least $49,271.65 in punitive damages.   To predict a likely punitive damages award, Defendant has recommended the use of a punitive to compensatory damages ratio.   In the case of Plaintiff William Rex Elmore, Defendant contends that a 2:1 ratio is appropriate and demonstrates that the amount in controversy more likely than not exceeds $75,000.

The evidence that Defendant has proffered to support the 2:1 ratio is two-fold: (1) this ratio is within the range of possible ratios alleged by Plaintiffs in their Complaint; and (2) this ratio "falls

---

[2] Due to the Supreme Court ruling in Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 549 (2005), once a defendant establishes that at least one of the plaintiffs satisfies the amount in controversy, the court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over all of the remaining plaintiffs' claims even if their "claims are for less than the jurisdictional amount specified in the statute[.]" Allapattah, 545 U.S. at 549.  Accordingly, Defendant need only demonstrate that one of the Plaintiffs more likely than not seeks an amount in controversy in excess of $75,000.

within the range of compensatory to punitive damage ratios that Kentucky courts have upheld in cases such as this, where plaintiffs have alleged fraud or bad faith."  (Def. Resp. 10.)

The Court finds that Defendant's first argument carries little value. The fact that Defendant's proposed ratio is within the range of Plaintiffs' proposed ratios is not evidence that it is more likely than not to be used by a jury.  While Defendant is correct that a 2:1 ratio is within the range of possible ratios proffered by Plaintiffs, the Court notes that 100:1 is also within the range of possible ratios.  However, arbitrarily choosing a ratio from a possible range of over one hundred different ratios does not demonstrate by a preponderance of the evidence that such a ratio is more likely than not to be used.  That Defendant chose a ratio on the low end of the possible range does not make it any less arbitrary then had it chosen a ratio at the higher end.  "The issue here is not what is possible, but rather whether it is 'more likely than not' that the $75,000 jurisdiction threshold is crossed." Judy v. JK Harris & Co. LLC, 2011 WL 4499316, at *7 (S.D.W. Va. Sept. 27, 2011); see also Burk v. Med. Sav. Ins. Co., 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) ("[T]he mere *possibility* of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met.") (emphasis added).  The Court finds that this *argument* is not sufficient *evidence* that a 9:1 ratio is more likely than not.

Defendant next argues that a 2:1 ratio is appropriate because it is within the range of ratios upheld in similar cases.  Several courts have found that a defendant may satisfy its burden of demonstrating the amount in controversy by proffering jury verdicts or punitive to compensatory ratios in analogous cases.  See e.g. Burk, 348 F. Supp. 2d at 1069 (removing defendant can demonstrate probable punitive damages through evidence of similar jury verdicts in analogous cases); Parrigin v. Pfaff Indus. of Amer., 2006 WL 3759585, at *4 (W.D. Ky. Dec. 19, 2006)

6

(examining range of verdicts in similar cases); Milter v. Wright Med. Grp., Inc., 2011 WL 4360024, at *3 (E.D. Mich. Sept. 19, 2011) (same).  However, the cases should be factually analogous.  If they are not, they are of little value in sustaining the defendant's burden.   See Molnar v. 1-800-Flowers.com, Inc., 2009 WL 481618, at *6 (C.D. Cal. Feb. 23, 2009) (collecting cases for the proposition that courts often reject evidence of similar verdicts where the defendant fails to show that the cited cases have analogous facts to the case at bar).

Defendant contends that the 2:1 ratio falls within the range of ratios that "Kentucky courts have upheld in cases such as this, where plaintiffs have alleged fraud or bad faith." (Def. Resp. 10.) In support of this statement, Defendant cites one Kentucky case, Farmland Mut. Ins. Co. v. Johnson, 36 S.W.3d 368 (Ky. 2000), and one case from the Fifth Circuit Court of Appeals, Arnold v. State Farm Fire and Cas. Co., 277 F.3d 772 (5th Cir. 2001).  However, neither of these cases is analogous to the instant case.  Plaintiffs' Complaint contains three causes of action: conversion, unjust enrichment, and theft by failure to make required disposition.  (See Compl.)  Johnson involved claims of breach of contract and bad faith under the Kentucky Unfair Claims Settlement Practices Act against an insurance company for failure to pay an insurance claim, Johnson, 36 S.W.3d at 371, while Arnold involved a purported class action suit regarding a two-percent hurricane deductible imposed by various insurance carriers, see Arnold, 277 F.3d at 774.  Neither of these cases involve claims for conversion, unjust enrichment, or theft.  These actions are not factually analogous and as such cannot sustain the Defendant's burden.[3]  See Molnar, 2009 WL 481618, at *6 .

---

[3] The Court also disagrees with the ratio that Defendant has calculated in Johnson.  While Defendant contends that it is a ratio of more than 27:1, the Defendant's calculation does not include the full amount of compensatory damages awarded to the plaintiff in Johnson.  When properly calculated, the appropriate ratio is actually less than 7:1.  See R.O v. A.C. ex rel. M.C., ---S.W.3d---, 2012 WL 967579, at *4 (Ky. Ct. App. Mar. 23, 2012) (calculating the punitive to

Because these cases should be disregarded, the only support for Defendant's contention that a 2:1 ratio is appropriate and "likely" is Defendant's statement to that effect.  Where a defendant's proffered ratio is supported by his argument alone and not by a preponderance of the evidence, courts have rejected the use of punitive damages in the amount in controversy.  See Wexler v. United Air Lines, Inc., 496 F. Supp. 2d 150, 154 (D.D.C. 2007) (refusing to consider punitive damages in the amount in controversy where defendant provided no evidentiary support for its figure, rendering it a "completely speculative estimate"); Varboncoeur v. State Farm Fire and Cas. Co., 356 F. Supp. 2d 935, 951 (S.D. Iowa 2005) (rejecting defendant's proffered ratio and finding that it "amounts to nothing more than a doubtful guess as to what the amount of punitive damages might be."); McCarthy v. Globe Life and Acc. Ins. Co., 2012 WL 786241, at *1-2 (D. Nev. Mar. 9 2012) (rejecting argument that the amount in controversy was met when the defendant "provided a case citation and argument, but no *evidence*.") (emphasis in original); Sol v. Pivotal Payments, Inc., 2012 WL 823246, at *2 (N.D. Cal. Mar. 9, 2012) (distinguishing cases cited in support of 2.4:1 ratio and rejecting the proffered ratio because it was based on argument alone); Adams v. Nationwide Mut. Ins. Co., 2003 WL 21251734, at *4 (N.D. Tex. Mar. 28, 2003) (rejecting the suggestion of a 3:1 ratio on the grounds that it was not based on sufficient evidence and was, therefore, merely speculative).  Accordingly, the Court finds that Defendant has not proffered any *evidence* that such a ratio is more likely than not to be used.[4]

---

compensatory damages ratio in Johnson as 7:1).

[4] The Court is unsure if punitive damages would even be appropriate in this case given the allegations contained in the Complaint.  See Hall v.Cliffs North American Coal, LLC, 2009 WL 4666484, at *3 (S.D.W. Va. Nov. 30, 2009) (rejecting defendant's proffered punitive to compensatory damages ratio when "it [was] not clear to the Court that this case would merit an award of punitive damages, least of all damages in such a high ratio.").

It is the Defendant's burden to demonstrate by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000. The Court is mindful that the removal statutes are to be narrowly construed. See, e.g., Long v. Bando Mfg. Of Amer., Inc., 201 F.3d 754, 757 (6th Cir. 2000) ("[B]ecause they implicate federalism concerns, removal statutes are to be narrowly construed."); Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir.1999) ("[W]e are mindful that the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction."). The Defendant has attempted to sustain its burden through the use of speculation and argument. Therefore, the Court finds that Defendant has failed to demonstrate by a preponderance of the evidence that any one of the Plaintiffs' combined compensatory and punitive damages claims more likely than not exceeds $75,000. Accordingly, the Court does not have diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and removal on that basis is not appropriate.

**B. Bankruptcy Jurisdiction**

Defendant contends that removal was also proper because the Court has bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334. Section 1334(b) states in pertinent part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Defendant argues that the Court has jurisdiction because the Plaintiffs' claims "arise under" the Bankruptcy Code, or in the alternative, that the Court has jurisdiction because the claims are "related to" the Eastern Livestock bankruptcy case.

"Section 1334 lists four types of matters over which the district court has jurisdiction: (1) 'cases under title 11,' (2) 'proceedings arising under title 11,' (3) proceedings 'arising in' a case

9

under title 11, and (4) proceedings 'related to' a case under title 11." Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.), 930 F.2d 1132, 1141 (6th Cir. 1991). "The first category refers merely to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303." Id. As this is obviously not the bankruptcy petition, there is not jurisdiction under the first category. The Sixth Circuit has held that

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a case under title 11). These references operate conjunctively to define the scope of jurisdiction. See In re Wood, 825 F.2d at 93. Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. Id.

In re Wolverine, 930 F.2d at 1141.

The Sixth Circuit has adopted the expansive definition of a "related to" proceeding first articulated by the Third Circuit in Pacor, Inc. v. Higgins (In re Pacor), 743 F.2d 984 (3d Cir. 1984). See id. at 1142. Under this definition, a proceeding is "related to" a bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Pacor, Inc., 743 F.2d at 994 (emphasis omitted). However, the Sixth Circuit has created an exception to this rule, acknowledging that under such an expansive definition, a "situation may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." Robinson v. Mich. Consol. Gas Co., 918 F.2d 579, 583 (6th Cir. 1990).

The Court finds that the instant case is "related to" the Eastern Livestock bankruptcy because the outcome of the instant case could conceivably have an effect on the bankruptcy estate. Plaintiffs are listed as creditors in the Eastern Livestock bankruptcy, where they seek to recover the value of the cattle sold to Eastern Livestock. (See Pls.' Resp. to Notice of Removal, at ¶ 13.) In the instant

case against Defendant Fifth Third, Plaintiffs likewise seek to recover the value of the cattle sold to Eastern Livestock.  To the extent that Plaintiffs are successful in the instant case, their claims in the bankruptcy estate will be reduced and/or extinguished, lest they experience an impermissible double recovery.  See Black v. Ryder/P.I.F. Nationwide, Inc., 15 F.3d 573, 581 (6th Cir. 1994) (finding double recovery impermissible because it is "common wisdom that an injured party may recover damages only for the actual loss he suffered and no more; he is to be made whole, but not entitled to be put in a better condition than he would be in had the wrong not been committed.") (internal quotation marks omitted).

In similar cases, courts have found such a conceivable effect satisfies the "related to" threshold for jurisdiction.  See Omega Tool Corp. v. Alix Partners, LLP, 416 B.R. 315, 320 (E.D. Mich. 2009) (finding "related to" jurisdiction where a plaintiff's claim against the debtor's bankruptcy estate would be reduced by any amount recovered against a third-party defendant for the same injuries); Randall & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 586-87 (5th Cir. 1999) (collecting cases for the proposition that "a claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer 'related to' jurisdiction.").  The Court agrees that the potential reduction in Eastern Livestock's bankruptcy estate due to the satisfaction of these Plaintiffs' claims by Defendant Fifth Third is a sufficient conceivable effect to confer the Court with "related to" jurisdiction.  Therefore, the Court finds that it has jurisdiction under 28 U.S.C. § 1334(b).

**C. Mandatory Abstention**

Notwithstanding the Court's finding that bankruptcy jurisdiction exists, Plaintiffs contend that this action should be remanded because mandatory abstention should apply.  Plaintiffs argue

11

that under 28 U.S.C. § 1334(c)(2) the Court has no choice but to mandatorily abstain from hearing

this case.  Section 1334(c)(2) states in pertinent part that

> Upon timely motion of a party in a proceeding based upon a State law claim or State
> law cause of action, related to a case under title 11 but not arising under title 11 or
> arising in a case under title 11, with respect to which an action could not have been
> commenced in a court of the United States absent jurisdiction under this section, the
> district court shall abstain from hearing such proceeding if an action is commenced,
> and can be timely adjudicated, in a State forum of appropriate jurisdiction.

For mandatory abstention to apply under § 1334, a proceeding must: (1) be based on a state law

claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be

commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and

(5) be a non-core proceeding. Lindsey v. O'Brien, Tanksi, Tanzer and Young Health Care Providers

of Conn. (In re Dow Corning Corp.), 86 F.3d 482, 497 (6th Cir. 1996).

The first element in the analysis is satisfied because the only claims alleged in the Plaintiffs'

Complaint are state law claims for conversion, unjust enrichment, and theft by failure to make

required disposition pursuant to K.R.S. § 446.070.  The second element is also satisfied because the

Court has already found that there is no diversity jurisdiction, and thus there is no basis for federal

jurisdiction absent the bankruptcy.  The third element is likewise satisfied because the current action

was commenced in a state forum of appropriate jurisdiction, the Metcalfe Circuit Court, prior to its

removal to this Court.  Defendant contends that in order to satisfy the "be commenced" element, that

the action must have been filed prior to the bankruptcy action itself.  However, recent case law

indicates that such an interpretation is incorrect.  See, e.g., XL Sports, Ltd. v. Lawler, 49 F. App'x

13, 17, 20 (6th Cir. 2002) (finding a state law action filed after the bankruptcy petition satisfied the

"be commenced" element).

The Court must now determine whether the action can be timely adjudicated and whether

the action is a "core" or "non-core" proceeding under the bankruptcy code.  Plaintiffs contend that this action can be timely adjudicated, and in support of that contention have submitted the affidavit of the Metcalfe Circuit Court Clerk stating that there are multiple three week blocks available for the trial of this matter between June and December of 2012.  (See Pls.' Mot. to Remand, Ex. Metcalfe Circuit Ct. Clerk Aff.)  Defendant contends that this matter cannot be timely adjudicated because Defendant has a contractual right to indemnification from Debtor, making the Debtor the real party in interest.  Therefore, Defendant argues the automatic stay would apply to this action in state court, preventing it from timely adjudication.  In support of this argument, Defendant cites Dunkirk Limited Partnership v. TJC Companies Inc., 139 B.R. 643 (N.D. Ohio 1992), which relied upon A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986).  The court in Dunkirk, found that where "suit is brought 'against a third party who is entitled to absolute indemnity[,]' . . . the real party in interest is the debtor[,]" and thus refusal to apply the bankruptcy stay to a state court action would defeat the purpose of the statute.  Dunkirk, 139 B.R. at 646.

The Sixth Circuit has recognized that "[s]ome courts have held that the debtor's stay may be extended to non-bankrupt parties in 'unusual circumstances.'" Patton v. Bearden, 8 F.3d 343, 349 (6th Cir. 1993) (citing A.H. Robins, 788 F.2d at 994.)  One such "unusual circumstance" is when a non-debtor defendant has a contractual right to *absolute* indemnity from the debtor.  A.H. Robins, 788 F.2d at 999.  However, where the non-debtor defendant's liability rests upon its own breach of duty, "unusual circumstances" are not present.  Id.  Several courts have found that the presence of an indemnification agreement alone does not represent sufficient "unusual circumstances" to enforce the bankruptcy stay.  See e.g. Al-Shara v. Wal-Mart Stores, Inc., 2012 WL 1119339, at *4-5 (E.D. Mich. Apr. 3, 2012) (finding no "unusual circumstances" where defendant merely presented a

13

standard-fare indemnity agreement); <u>DeSouza v. PlusFunds Grp., Inc.</u>, 2006 WL 2168478, at *3 (S.D.N.Y. Aug. 1, 2006) (finding no "unusual circumstances" where non-debtor defendants presented agreement to be indemnified by debtor corporation but defendants' liability could rest upon their own breaches of duty rather than their status as directors); <u>Straney v. General Motors Corp.</u>, 2006 WL 2911452, at *4 (E.D. Mich. Oct. 6, 2006) (finding no "unusual circumstances" due to presence of indemnity agreement because "plaintiff presumably had nothing to do with that indemnification agreement and it is inconceivable that his claims against GM may be thwarted merely because GM has attempted to 'contract away' this responsibility to another party that has now filed a bankruptcy petition.").

The indemnification agreement at issue in the instant case states:

> [Eastern Livestock] shall indemnify, defend, save and hold [Fifth-Third] . . . harmless of, from and against all claims, demands, liabilities, judgments, losses, damages, costs and expenses, joint or several . . . that [Fifth-Third] or any such indemnified party may incur arising out of this Agreement, any of the other Loan Documents or any act taken by [Fifth-Third] hereunder **except to the extent of the willful misconduct or gross negligence of such indemnified party**, as determined by a court of competent jurisdiction in a final non-appealable judgment or order.

(Pls.' Mot. to Remand, Ex. Credit Agreement ¶ 9.11 (emphasis added).)  Plaintiffs contend that the claims alleged in the Complaint are "based upon the secret and independent tortious acts" of Defendant, and that they do not qualify for indemnification under the Credit Agreement.  The Court agrees with Plaintiffs and finds that the instant claims and the language of the indemnity provision demonstrate that this is not an "absolute" indemnity provision.  A jury could find that the allegations contained within the Complaint, if proven true, demonstrate willful misconduct on the part of the Defendant, making indemnification inappropriate.  Therefore, the existence of this indemnification provision does not provide the "unusual circumstances" necessary to justify the application of the

14

bankruptcy stay to the instant action.  Accordingly, the Court finds that this matter is capable of timely adjudication.

The final issue is the determination of whether the instant matter is a "core" or "non-core" proceeding.  Whether a proceeding is one that is "core" or "non-core" depends upon whether that proceeding is one that "arises under" title 11, "arises in" a title 11 case, or is simply "related to" a title 11 case.  Proceedings that "arise under" title 11 or "arise in" a title 11 case are "core" proceedings, where as proceedings that are merely "related to" a title 11 case are "non-core" proceedings.  In re Nat. Century Fin. Enter., Inc., 423 F.3d 567, 574 (6th Cir. 2005) (citing In re Combustion Eng'g, Inc., 391 F.3d 190, 225-26 (3d Cir. 2004)).  The distinction between the different types of proceedings was outlined by the Sixth Circuit in In re Wolverine Radio Co.:

> The phrase "arising under title 11" describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, 1 Collier on Bankruptcy ¶ 3.01[1][c][iii], and "arising in" proceedings are those that, by their very nature, could arise only in bankruptcy cases.  Id. at ¶ 3.01[1][c][v]. Conversely, if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy, then it is not a core proceeding.  In re Wood, 825 F.2d at 97.

In re Wolverine, 930 F.2d at 1144.  While neither "core" nor "non-core" proceedings are defined by statute, Congress has enumerated a nonexclusive list of fifteen proceedings that qualify as "core" proceedings under 28 U.S.C. § 157(b)(2) to aid in the determination.

Looking to the instant case, it clearly does not invoke a substantive right created by federal bankruptcy law, and therefore, is not a claim that "arises under" title 11.  Defendant contends that this case is actually one seeking a determination of the validity, extent, or priority of liens, and is thus an enumerated "core" proceeding under 28 U.S.C. § 157(b)(2)(K).  The Court disagrees. Plaintiffs are not seeking a determination of the validity or priority of Defendant's first priority lien

on the assets of the Debtor's estate.  To the contrary, Plaintiffs are conceding that the lien and its priority is valid, and alleging that by obtaining the lien Defendant committed the torts of conversion, unjust enrichment, and theft by failure to make required disposition.  As the instant case does not invoke a substantive right created by federal bankruptcy law, the Court finds that it is not one that "arises under" title 11.

Nor is this a proceeding that "arises in" a case under title 11.  In order for a proceeding to be deemed one that "arises in" a case under title 11, it must be one that by its very nature could not exist outside of the bankruptcy context.  In re Wolverine, 930 F.2d at 1144.  "The category of proceedings 'arising in' bankruptcy cases 'includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens.'" Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006) (quoting 1 Collier on Bankruptcy § 3.01[4][c][iv] at 3-31).  This is a limited category of proceedings.  See In re Wood, 825 F.2d 90, 95 n.25 (5th Cir. 1987) ("Numerous courts have noted the necessity of defining core proceedings narrowly so as to conform to the constitutional proscription of Marathon.") (collecting cases).

Plaintiffs' Complaint contains three state law claims that essentially allege that Defendant intentionally froze Eastern Livestock's account without proper notice thereby gaining possession and control of the Plaintiffs' livestock through the assertion of its first priority lien.  As such, this is a proceeding that could exist regardless of the presence of a bankruptcy action.  "It is simply a state [conversion] action that, had there been no bankruptcy, could have proceeded in state court." Id. at 97.  Therefore, this proceeding is not one that "arises in" a title 11 case.  Furthermore, the parties are each non-debtors, and the Sixth Circuit has found that "suits between third parties that affect the administration of the title 11 case are typically considered to fall within the 'related to'

category." In re Wolverine, 930 F.2d at 1145. Accordingly, the Court finds that this proceeding neither "arises under" title 11 nor "arises in" a case under title. Therefore, because it is only "related to" the Debtor's bankruptcy, it is a "non-core" proceeding.

Because Plaintiffs have demonstrated the presence of all five abstention elements, the Court finds that mandatory abstention is appropriate and necessary and that jurisdiction under 28 U.S.C. § 1334 is lacking. Furthermore, having found that neither diversity jurisdiction nor bankruptcy jurisdiction is appropriate, there is likewise no basis to support a finding of supplemental jurisdiction. See 28 U.S.C. § 1367.

Accordingly, the Court finds that Defendant has failed to demonstrate that this Court has original jurisdiction over this matter. Therefore, this action is remanded back to the Metcalfe Circuit Court.

## III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand [DN 15] is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 23, 2012

cc: counsel of record

17